**OBJECTIONS TO THE PSR**

In Mr. Klotz's file is a list of objections to the PSR from Mr. Abramo dated September 13, 2003. It is not certain that these objections were ever submitted to the USPO or to the Court, so in an abundance of caution, I am setting forth Mr. Abramo's objections and additional concerns I have regarding the PSR. These specific objections are submitted in addition to the arguments with respect to the sentencing guidelines set forth in defense's sentencing letter.

Page 22, ¶ 92: Mr. Abramo did not hire managers nor did he hire and fire brokers at Sovereign.

Page 22, ¶ 93: Consalvo was not a ghost employee of Sovereign. Consalvo was a licensed stock broker at Sovereign and he did not control off short accounts for Mr. Abramo nor is Mr. Abramo aware or does he believe that Consalvo laundered money earned at Sovereign through his wife's maiden name.

Page 22, ¶ 94: Mr. Abramo disputes that there was a scam surrounding SC&T IPO. There was no restriction on selling stock in the IPO or for 190 days after the date of the offering. Instead, 700,000 shares of the unregistered stock were registered in the IPO registration documents and could be sold with the underwriter's permission during the first 180 days. The selling price of the IPO stock was $5.00 and it was impossible to be sold for $6.00 in the IPO. SC&T stock rose to $8.80 per share over a seven-month period and the defendants could not be selling SC&T stock short while they were long over a million more shares of SC&T.

Page 23, ¶ 96: Mr. Abramo disputes the assertion that he created an artificial demand for SC&T stock.

Page 24, ¶ 102: The claim is that Mr. Abramo and co-conspirators posted $4,996,201.87 in profits for the participants in this so-called scam between January 1993 and March 1999. However, Mr. Abramo was involved SC&T only from December 1995 to June 1996. There is no proof only an assertion that there were losses of $8,818,000 in the SC&T scheme and there is no specific proof as to the time Mr. Abramo was actually involved at SC&T and what amount is fairly attributable to him. Furthermore, the government conceded in its Memorandum of Law in Opposition to Defendant's Post-Trial Motions that the Court find an illicit profit from the scheme of $600,000 which was the amount Mr. Abramo admitted in his Florida plea agreement. (See Gov. Mem. of Law dated 11/3/04 at 24.)

Page 25, ¶ 113 incorrectly states Weiss murder as a violation of § 1959 rather than 1962(c) and (d) as set forth in the indictment.

Page 26, ¶ 119 incorrectly states Garofano murder as a violation of § 1959 rather than 1962(c) and (d) as set forth in the indictment.

Page 26, ¶ 125 & 131: Base Offense Level (Group 3 – Conspiracy to Murder Annunziato and Vastola) is incorrectly stated as a violation of 18 USC § 1959. Mr. Abramo was charged under state law as a predicate act and under the law or guideline book in existence at the time of the conspiracy to murder, the level for conspiracy to murder during those years was level 20. A violation of 18 § U.S.C. 1962 is covered by § 2E1.1 of the Guidelines which directs that the base offense level should be 19 or the offense level applicable to the underlying racketeering activity, whichever is greater. The probation report states that for these purposes, each racketeering act is being treated as a separate count of conviction. ¶ 108. However, those counts are for conduct which occurred in 1989, 1990 and 1991 thus this raises an ex post facto issue with respect to the use of the 1998 Guidelines Manual for determining the applicable offense level for the 1989 and 1990 . The Guidelines at that time provided for a base level of 20 rather than 28. *See* 18 USCA APP. 4 § 2A2.1 "Conspiracy to Commit Murder" (1990).[1]

Page 27, ¶ 144: Mr. Abramo contests the loss of $8,818,000 and the government has not shown any proof such a loss. Furthermore, the government conceded in its Memorandum of Law in Opposition to Defendant's Post-Trial Motions that the Court find an illicit profit from the scheme of $600,000 which was the amount Mr. Abramo admitted in his Florida plea agreement. (See Gov. Mem. of Law dated 11/3/04 at 24.) Furthermore, $1,066,840.80 has already been forfeited by Mr. Abramo in Florida. *Id.*

Page 27, ¶ 145: This guideline was not in effect at the time of the crime, however, minimum planning and a two-point enhancement was in effect so although the guideline is ultimately the same, the basis is different and should be corrected.

Page 33, ¶ 194: Financial disclosure documents by Mr. Abramo in Tampa from 1999 includes money the government claimed was in the Cayman Islands and an IRA account. The remainder of the assets belongs to Mr. Abramo's ex-wife and should not be included in the PSR.